STATE OF NORTH CAROLINA v. CLINTON MARSHALL

No. 12

(Filed 6 October 1981)

1. Criminal Law § 146.6— moot questions

Questions raised by defendant relating to the sentencing phase of a first degree murder trial are moot and will not be decided where the jury at that phase returned a verdict favorable to defendant.

2. Criminal Law §§ 15.1, 98.2; Jury § 2.1— denial of change of venue, special venire and sequestration of witnesses

The trial court did not abuse its discretion in denying defendant's motions for change of venue, for a special venire, and for sequestration of the State's witnesses.

3. Jury § 6— motion for individual voir dire

Defendant failed to show that the trial court erred in the denial of his motion "for individual voir dire" where the record does not disclose the text of the motion or any explanation about it.

4. Homicide § 21.1— photographs of body and crime scene

The trial court in a first degree murder prosecution did not err in admitting photographs of the victim's body and of the service station where the alleged homicide took place where the photographs were used to illustrate the testimony of the witnesses, and the court instructed the jury that the photographs could be considered for that purpose only and not as substantive evidence.

**5. Homicide § 21.5— first degree murder—sufficient evidence of deliberation**

> The evidence was sufficient to permit the jury to find that defendant killed the victim with premeditation and deliberation and thus was guilty of first degree murder where there was evidence tending to show that defendant and the victim engaged in an argument and scuffle concerning two bullet holes in a front window of the victim's service station; after the victim slapped defendant a few times, defendant ran across the road to his home where he obtained a rifle; defendant then returned to the victim's service station, proceeded to exchange insults with the victim, and then shot him.

**6. Criminal Law § 5— exclusion of evidence of defendant's mental deficiency**

> The trial court in a first degree murder prosecution did not err in excluding testimony by a psychologist that he had concluded from testing of defendant that defendant had an I.Q. of 54, that defendant was mildly retarded, and that defendant's mental deficiency would cause him to use poor judgment and be "impulsive in his responses," since evidence of low mentality in itself was not sufficient to raise a defense to a criminal charge, defendant did not plead insanity, and there was no evidence tending to show that he was insane or lacked requisite mental capacity to commit the murder.

APPEAL by defendant from *Albright, Judge*, 3 November 1980, Special Criminal Session of Superior Court for MONTGOMERY County.

Upon a plea of not guilty defendant was tried on a bill of indictment charging him with the first-degree murder of William Junior (Billy) Simmons on 12 August 1980. A bifurcated trial was held as mandated by G.S. 15A-2000, *et seq.*

Following the guilt determination phase of the trial, the jury returned a verdict finding defendant guilty of first-degree murder. The court then conducted a sentencing hearing, using the same jury. After hearing additional evidence, arguments of counsel and instructions by the court, the jury recommended that defendant be given a life sentence.

From judgment imposing a life sentence, defendant appealed.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Ann Reed, for the state.*

*Russell J. Hollers for defendant-appellant.*

BRITT, Justice.

[1] Defendant's assignments of error numbers 1, 2, 3, 5 and 14 all relate to the sentencing phase of the trial. Since the jury at that

phase returned a verdict favorable to defendant, the questions which he attempts to raise are moot and will not be decided. *Jamison v. Kyles*, 271 N.C. 722, 157 S.E. 2d 550 (1967). We will consider and pass upon only those assignments relating to the guilt determination phase of the trial.

[2] Defendant has consolidated his assignments of error 5, 6, and 7 into one argument. He contends that the trial court abused its discretion in denying his motions for change of venue, for a special venire, and for sequestration of the state's witnesses. There is no merit in these assignments.

It is well-settled, and defendant concedes, that the court's ruling on each of the questions raised by these assignments is addressed to the sound discretion of the trial court and that its ruling will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Hamilton*, 298 N.C. 238, 258 S.E. 2d 350 (1979) (change of venue); *State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976) (special venire panel); and G.S. 15A-1225 (exclusion of witnesses from courtroom). Defendant has failed to show any abuse of discretion.

[3] By his assignment of error number 8, defendant contends that the trial court erred in denying his motion "for individual voir dire." The record reveals that this motion was made and denied at a pretrial hearing on 13 October 1980 and again when the case was called for trial on 3 November 1980. However, the record does not disclose the text of the motion or any explanation about it—only the words above quoted. That being true, we can only speculate as to the nature of the motion. This we will not do. It is encumbent on the defendant to show error and also to show that the error was prejudicial to him. *State v. Sanders*, 280 N.C. 67, 185 S.E. 2d 137 (1971). The assignment is overruled.

[4] By his eleventh and twelfth assignments of error, defendant contends the trial court erred in admitting into evidence certain photographs of the victim's body and of the service station where the alleged homicide took place. These assignments have no merit.

It is axiomatic that a witness may use photographs to illustrate his testimony and make it more intelligible to the court and jury. 1 Stansbury's N.C. Evidence (Brandis Rev.) § 34. "If a

photograph is relevant and material, the fact that it is gory or gruesome . . . will not alone render it inadmissible." *Ibid. See also State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979).

The record reveals that the photographs complained of were used to illustrate the testimony of witnesses. The court instructed the jury that the photographs would be considered for that purpose only and not as substantive evidence. The photographs were not sent to this court as part of the record on appeal, therefore, we are not in position to determine how gory or gruesome they are. We conclude that defendant has failed to show error.

[5] By his assignments of error 9 and 12, defendant contends the trial court erred in denying his motions to dismiss, particularly as to first-degree murder, made at the conclusion of the state's evidence and at the close of all of the evidence. These assignments have no merit.

The evidence presented by the state, and reasonable inferences arising therefrom, is summarized in pertinent part as follows:

On 12 August 1980 Billy Simmons was operating a service station and grill on U.S. Highway 220 several miles south of Candor, North Carolina. Defendant lived in a house which was located immediately across the highway from Simmons' place of business. On the morning of said date, Simmons discovered two bullet holes in a front window of his building. Early that evening defendant went to Simmons' place and an argument arose between them regarding the bullet holes. Defendant denied knowing anything about them.

The argument was followed by a scuffle in front of the station between defendant and Simmons after which defendant went to his home. Simmons entered his station, told his wife to call the sheriff's department, and put a small pistol in his hip pocket. Shortly thereafter defendant returned to the Simmons' premises carrying a rifle. Simmons went to his front door and stood there while defendant proceeded to use profane and indecent language. Simmons asked defendant several times to "go back across the road". Simmons continued to stand in his doorway with his arms crossed. He told defendant that the "law" had been called and would soon come and "settle all of this".

Several rifle shots were fired and Simmons fell to the floor. Defendant left the scene. An ambulance was called but before it arrived, a highway patrolman arrived on the scene. The patrolman found Simmons lying on his right side in the doorway of his service station. Simmons was unconscious but the officer determined that he was still alive. An ambulance arrived some five minutes later, carried Simmons to the hospital in Troy, but he was pronounced dead on arrival at the hospital. Immediately thereafter a small pistol was found "buried" in a rear pocket of Simmons' pants.

An autopsy revealed gunshot wounds to Simmons' leg, body and head. One bullet entered his forehead on the right side, passed through his head and lodged in the bone on the left side. Death resulted from the shot to his head.

At around 9:00 p.m. on said date, defendant went to the home of his sister, Judy Marshall. He gave her a .22 caliber automatic rifle which she later delivered to the police. Defendant told his sister that Simmons had slapped him and "he shot him".

Defendant's evidence, including his own testimony, is summarized in pertinent part as follows:

On the date in question defendant was 22 years old. He left school when he was 16. The entire time he was enrolled he attended special education classes. Defendant could not read. He had moved into the house across the highway from Simmons' place of business some two years prior to the shooting incident. His girlfriend lived with him and they had a 10-month-old baby. He had worked for Simmons at intervals over a period of several years.

Some two weeks prior to the day of the shooting, defendant was working for Simmons in a peach orchard. On that occasion, he and Simmons got into an argument when Simmons complained about some of his tools being missing. Simmons accused defendant of knowing about people taking his tools and breaking into his station but not telling Simmons about it. When defendant denied knowing anything about these matters, Simmons called him a liar. After further conversation Simmons drew his pistol and pointed it at defendant. Defendant grabbed a hatchet and Simmons "backed off".

On the evening in question, defendant went to Simmons' station to purchase some items. Simmons proceeded to talk to him regarding the two bullet holes in the window. When defendant insisted that he knew nothing with respect to who shot the holes, Simmons called him a liar. Defendant then called Simmons a liar. After that Simmons grabbed him and slapped him to the ground. "He slapped me three times in the face." Defendant called Simmons a s.o.b. and ran across the road to his home where he obtained his rifle.

Defendant returned to the station, crying and mad. Simmons told him he slapped him because he called Simmons a damn liar. After they exchanged words with each other, defendant saw the handle of a pistol in Simmons' pocket. Simmons reached for his pistol after which defendant began shooting. He did not intend to shoot Simmons. "I wasn't thinking nothing because I was mad . . . I was going to let him know he wasn't going to slap me around.   . . ."

The trial court submitted the case to the jury on first and second-degree murder as well as voluntary manslaughter. We hold that the evidence was sufficient to survive the motions for dismissal of all those offenses.

Murder in the first-degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). Murder in the second-degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Fleming, supra.* Manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. *State v. Benge*, 272 N.C. 261, 158 S.E. 2d 70 (1967).

Defendant does not seriously argue that the charges of murder in the second-degree and manslaughter should have been dismissed. The thrust of his argument is that all of the evidence showed that he was not in a "cool state of blood" at any time during the events that led up to and at the time of the shooting.

Murder in the first-degree differs from murder in the second-degree in that the former requires premeditation and deliberation. Premeditation means thought beforehand for some length of time, however short. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d

80 (1975). Deliberation means an intention to kill, executed by defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose, and not under the influence of a violent passion suddenly aroused by some lawful or just cause or legal provocation. *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. denied,* 30 L.Ed. 2d 74. "Cool state of blood" as used in connection with premeditation and deliberation in a homicide case does not mean the absence of passion and emotion, but an unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional state at the time. *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769, 96 A.L.R. 2d 1422, *cert. denied,* 7 L.Ed. 2d 49 (1961). Deliberation is seldom capable of actual proof, but must be determined by the jury from the circumstances. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980).

The undisputed evidence in the case at hand shows that after defendant and Simmons had their scuffle, and after defendant says Simmons slapped him, defendant crossed the highway to his home, obtained his rifle, returned to Simmons' premises, proceeded to exchange insults with Simmons, and then shot him. We hold that it was for the jury to determine if defendant killed Simmons with premeditation and deliberation.

[6] By his assignment of error number 17, defendant contends the trial court erred in not permitting a psychologist to testify with regard to defendant's mental capacity. This assignment has no merit.

After defendant testified, he called Dr. Ferre, a psychologist, as a witness. State objected to the testimony proposed to be offered by this witness and the court conducted a voir dire in the absence of the jury. At that time the witness stated that he had conferred with defendant; that he had conducted an oral testing of defendant; that he had concluded that defendant had an I.Q. of 54; that defendant was mildly retarded; and that defendant's mental deficiency would cause him to use poor judgment and be "impulsive in his responses." The court refused to admit this testimony.

Defendant did not plead insanity and there was no evidence tending to show that he was insane or lacked requisite mental

capacity to commit the crime with which he was charged. "Evidence of low mentality in itself is not sufficient to raise a defense to a criminal charge." Huskins, J., in *State v. Vinson*, 287 N.C. 326, 343, 215 S.E. 2d 60 (1975), citing *State v. Rogers*, 275 N.C. 411, 168 S.E. 2d 345 (1969), *cert. denied*, 24 L.Ed. 2d 518 (1970).

We have considered the other assignments of error brought forward in defendant's brief and conclude that they too are without merit.

In defendant's trial and the judgment entered we find

No error.