STATE v. MYERS

[123 N.C. App. 189 (1996)]

STATE OF NORTH CAROLINA v. MARK STEVEN MYERS, Defendant

No. COA95-986

(Filed 16 July 1996)

## 1. Burglary and Unlawful Breakings § 57 (NCI4th); Appeal and Error § 344 (NCI4th)— burglary and larceny—sufficiency of evidence—failure to renew motion

The trial court did not err by denying defendant's motion to dismiss charges of first-degree burglary and felonious larceny where defendant contended that there was insufficient evidence of a breaking, an entry, and felonious intent, and that there was no evidence that he ever had possession or control of the alleged stolen property because none of it was found in his actual or constructive possession. Although defendant failed to renew his motion to dismiss at the close of all evidence, waiving his objections concerning the sufficiency of the evidence, the Court of Appeals chose to consider the appeal on its merits and, upon reviewing the record, held that the trial court properly denied the motion.

**Am Jur 2d, Appellate Review § 671; Burglary §§ 44, 45.**

## 2. Evidence and Witnesses § 2937 (NCI4th)— conduct while in custody—admissible

The trial court did not abuse its discretion in a prosecution for first-degree burglary and felonious larceny by overruling defense objections to a line of questioning regarding conduct while defendant was in custody awaiting trial. Questions such as these are permissible at the trial court's discretion and defendant failed to show abuse of discretion.

**Am Jur 2d, Evidence §§ 301, 530.**

## 3. Evidence and Witnesses § 2301 (NCI4th)— testimony of clinical social worker—defendant laboring under defect of mind or reason—not admissible

The trial court did not err in a prosecution for first-degree burglary and felonious larceny by sustaining the State's objection to defendant's offer of testimony from a substance abuse counselor and clinical social worker that defendant was laboring under such a defect of reason from disease or deficiency of the mind that he was incapable of knowing the nature and quality of

his acts, or of distinguishing between right and wrong in relation to those acts at the time of the alleged offense. The witness was asked her opinion on the *M'Naghten* rule, which is a legal term, and there is no evidence in the record to indicate that the witness was qualified to make an assessment under that rule. As the *M'Naghten* rule is a legal standard, a question of whether its determination has been met is a question for the jury.

**Am Jur 2d, Criminal Law §§ 57-59, 79; Expert and Opinion Evidence §§ 193, 194, 362, 363.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**Admissibility of expert testimony as to whether accused had specific intent necessary for conviction. 16 ALRth 666.**

**4. Criminal Law § 771 (NCI4th)— long term voluntary intoxication—insanity instruction—refused**

The trial court did not err in a prosecution for first-degree burglary and felonious larceny by refusing to submit defendant's requested instruction on the defense of insanity where no evidence tended to show that defendant was suffering from any chronic or permanent insanity and defendant's voluntary intoxication and his actions on the night in question did not justify an instruction on the defense of insanity pursuant to the M'Naghten rule.

**Am Jur 2d, Criminal Law §§ 61, 80; Trial §§ 1093, 1125, 1279, 1280.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**Construction and application of 18 USCS sec. 17, providing for insanity defense in federal criminal prosecutions. 118 ALR Fed. 265.**

**5. Criminal Law § 1086 (NCI4th)— Fair Sentencing Act—two offenses—aggravating and mitigating factors—found separately—announced together**

The trial court did not err when sentencing defendant for first-degree burglary and felonious larceny by failing to find factors in aggravation or mitigation for both offenses and then sen-

tencing him to a term in excess of the presumptive. The trial court completed and submitted only one form sheet listing aggravating and mitigating factors, but the transcript clearly reveals that the court stated that the factors were for both charges. The court considered the factors separately for each offense and simply announced the factors jointly.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from jury verdicts and judgments entered 15 March 1995 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 3 June 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General John A. Greenlee, for the State.*

*Aycock, Spence & Butler, by W. Mark Spence, for defendant-appellant.*

JOHNSON, Judge.

The State's evidence tends to show that Candace Daniels was awakened in the early morning hours of 16 July 1994 at her family home in Wanchese, North Carolina by noises emanating from the downstairs area of the house. She heard someone turning a door handle, and she awakened her husband and checked on their children. Mr. and Mrs. Daniels both saw a man dressed in a white tee shirt and dark pants in their backyard area, stumbling around and carrying some sort of swinging object. He was observed bending over and placing something down. Mr. Daniels saw the man's face as he walked back toward the house, and at trial identified the man as defendant.

When Mrs. Daniels went downstairs, she found that tongs were lying on the kitchen counter; that a loaf of bread was missing; that the microwave had digits punched; that "smeary" fingerprints were on the microwave pad and cellophane was wadded up on the counter; that margarine, which had been in the refrigerator, was on the counter; and that a plate of turkey was missing from the refrigerator. A dish towel was also found in the yard and was later identified by Mrs. Daniels as being hers and having been in the house.

Mr. Daniels' brother was called to assist in a search for the intruder. Upon the arrival of his brother, Mr. Daniels retrieved his shotgun and left the house with his brother to begin the search. They drove down a nearby road to look for the intruder. As they drove

**STATE v. MYERS**

[123 N.C. App. 189 (1996)]

slowly down a road near the front of the house, they heard a coughing noise and saw defendant lying in the grass on the side of the road. They yelled at him, but he did not move. Defendant was approximately one hundred (100) feet from the Daniels' residence. He was moaning and throwing up. Defendant could not get up on his own at that time. His vomit looked like white meat, was "bready," and was smeared on his face. There was also a strong smell of chlorine. Mr. Daniels identified defendant as the person he saw in his backyard.

Shortly after Mr. Daniels and his brother located defendant, Sergeant Phillip Etheridge of the Dare County Sheriff's Department arrived. Sergeant Etheridge found a loaf of bread in a neighbor's yard. The plate, which the turkey had been on, was found by Mr. Daniels' son behind the house next door to the Daniels' house. Neither the dish towel, the plate, nor the loaf of bread were found in defendant's possession or near where he was located.

Sergeant Etheridge recognized defendant and patted him down upon his arrival. Defendant had vomit on his face, his clothes and on the ground around him, and was still vomiting at that time. Sergeant Etheridge and another officer, Jay Price, picked defendant up, cleaned him with bottled water and paper towels and placed him in the patrol car. Etheridge noticed the odor of chlorine or bleach and a stringy meat-like substance and dough-like substance in the vomit. Defendant was impaired and very sick when Etheridge picked him up. Etheridge did not question defendant that evening due to his condition. Etheridge included in his report of the evening's events that "Mr. Myers was covered with vomit and incoherent." Etheridge did not advise defendant of his *Miranda* rights because he felt that defendant would not understand him in his condition. Etheridge was of the opinion that defendant was impaired from the use of alcohol and drugs. Etheridge testified that one of the reasons that he did not Mirandize defendant was that defendant was incapable of thinking or planning or making decisions at that time.

Defendant testified that he had consumed a considerable quantity of alcohol earlier that day, and believed that he was trying to reach a location where he sometimes spent the night. He claimed to vaguely recall bright lights and an officer questioning him. Defendant's other evidence tends to show that defendant developed a problem with the use and abuse of alcohol at approximately eighteen years of age. He became dependent on alcohol shortly after he turned eighteen while living in Virginia Beach, Virginia.

Defendant stated that he first needed treatment for his abuse of alcohol when he was in his early twenties, and that he was treated in an institution for alcoholism in the early 1980's. He was committed to Tidewater Psychiatric Institute in Virginia on several occasions. Subsequently, he was treated at the Eastern State Mental Hospital in Virginia for alcohol abuse. He never successfully completed any of those treatment programs. Following participation in each of those programs, he eventually resumed his drinking pattern.

Defendant eventually moved from Virginia Beach to Dare County, North Carolina approximately ten years prior to the date of the offense. During that period of time, he continued to drink and continued to have problems with the police. During the last ten years, he has been treated and counseled at the Albemarle Mental Health Center in Manteo, North Carolina, beginning in early 1994. In addition, in early 1994, defendant enrolled in the "Teen Challenge" program operated in Dare County. He was there approximately forty (40) days, but left Teen Challenge and began drinking again. After leaving Teen Challenge, he lived wherever he could find shelter—on Roanoke Island, North Carolina in an old vehicle which was not operable, on the porches of abandoned homes, etc. During this period of time, defendant consumed, during the course of a day, three (3) to four (4) quarts of beer which he purchased with money raised by panhandling, doing odd jobs, and with food stamps. Between May and July of 1994, defendant was seen regularly by Ms. Bonnie Meadows, a substance abuse counselor at the Albemarle Mental Health Center in Manteo.

Defendant was diagnosed, prior to this alleged offense, by the Albemarle Mental Health Center as alcohol dependent, having a personality disorder (schizotypal traits), and was prescribed anti-depressant medications by the Mental Health Center psychiatrist. This diagnosis was confirmed by Dr. James G. Groce, M.D., Associate Director of Forensic Psychiatry at Dorothea Dix Hospital on 30 January 1995 during a court-ordered evaluation which revealed an unspecified personality disorder with schizoidal traits and alcohol dependence.

Defendant had been convicted in excess of one hundred (100) times of public drunkenness and affrays arising from his drinking. He also had been convicted of two (2) prior felony breaking and entering charges. Defendant was intoxicated during the commission of each of his prior convictions.

**STATE v. MYERS**

[123 N.C. App. 189 (1996)]

Further evidence included the testimony of Carolyn Carver, a substance abuse counselor and clinical social worker. She testified that while she believed defendant suffered from alcohol dependency and some sort of personality disorder, perhaps associated with organic damage caused by alcohol abuse, she could not affirmatively diagnose a mental defect not arising as a result of intoxication. Ms. Carver testified that she did not believe defendant was capable of planning or deliberating an intentional act at the time of the offense at issue. Additionally, she opined that as a result of the consumption of alcohol, defendant's mental processes were overcome to the extent that he had lost his capacity to think and to plan or to form any specific intent to do any particular act. Moreover, Ms. Carver opined that at the time of the alleged offense, defendant was laboring under such a defect of reason from disease or deficiency of the mind as to be incapable of knowing the nature and quality of his acts. Although she believed defendant was experiencing an alcohol-induced black-out during the time of the crime, she admitted that she could not be certain about this except as the events were recounted to her by defendant. Permanent brain damage impairing judgment as a result of chronic alcohol abuse (organicity) cannot be confirmed except by autopsy, to Ms. Carver's knowledge.

The State objected to her testimony regarding that opinion, and Judge Parker sustained the objection. Ms. Carver testified that during the interview, defendant was at times very confused, paranoid and suspicious. Defendant stated to the investigating officer and to Ms. Carver that he had no recollection of the evening in question.

Following the trial, a jury returned guilty verdicts to first degree burglary and felonious larceny. The trial court sentenced defendant on the charge of first degree burglary to twenty (20) years and on the charge of felonious larceny to five (5) years, to run consecutively, in the custody of the North Carolina Department of Correction. Defendant appeals.

[1] Defendant argues first that the trial court erred in denying his motion to dismiss all of the charges on the grounds that the evidence was insufficient to support a conviction in that there was insufficient evidence of a breaking, insufficient evidence of an entry and insufficient evidence of felonious intent. Furthermore, defendant argues that because no property allegedly stolen from the residence was found in his actual or constructive possession, no evidence existed which indicated that he had ever had possession or control of any of

the alleged stolen property. We disagree, and find defendant's arguments to be without merit.

A careful review of the record reveals that although defendant made a motion to dismiss all charges against him at the close of the State's evidence, the motion was denied, and defendant presented evidence and failed to renew the motion, at the close of all of the evidence. Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure provides that:

> If a defendant makes [a motion to dismiss] after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, his motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.
>
> A defendant may make a motion to dismiss the action or judgment as in case of nonsuit at the conclusion of all the evidence, irrespective of whether he made an earlier such motion. . . . However, if a defendant fails to move to dismiss the action . . . at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged.

N.C. R. App. P. 10(6)(3). Accordingly, defendant has waived his objections concerning the sufficiency of the evidence.

Nevertheless, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we have chosen to consider the appeal on its merits. *See State v. O'Neal*, 77 N.C. App. 600, 335 S.E.2d 920 (1985). Upon our review of the record, we believe that the trial court properly denied defendant's motion to dismiss. *See State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). Therefore, defendant's first and second assignments of error fail.

[2] Defendant next argues that the trial court erred in overruling his objections to a line of questioning by the district attorney regarding alleged conduct, charges of rule violations and disruptions allegedly occurring while defendant was in custody awaiting trial on the charges since the line of questioning was irrelevant, immaterial and tended to prejudice the jury against him. Specifically, defendant argues that the evidence concerning discipline problems at the Detention Center was irrelevant as to the question of whether he committed the offense. *See* N.C.R. Evid. 401. Defendant also argues that this evidence was used to question his character or a trait of his

character. Thus, he concludes that this evidence was irrelevant and therefore inadmissible.

The State, however, argues that the questions were used to impeach defendant's credibility, and were relevant concerning the antisocial and disruptive behavior of defendant. *See State v. King*, 224 N.C. 329, 30 S.E.2d 230 (1944) (finding that questions concerning a defendant's antisocial behavior, even though collateral to the acts constituting crimes for which he was being tried, were clearly allowed for impeachment purposes). Questions such as the ones asked here on cross-examination are permissible at the trial court's discretion. *State v. Currie*, 293 N.C. 523, 283 S.E.2d 477 (1977). Defendant has failed to show that the trial court abused its discretion, therefore, his argument fails.

[3] Defendant also argues that the trial court erred in sustaining the State's objection to his offer of the testimony of Carolyn Carver that defendant was laboring under such a defect of reason from disease or deficiency of the mind that he was incapable of knowing the nature and quality of his acts, or of distinguishing between right and wrong in relation to those acts at the time of the alleged offense. Out of the presence of the jury, defendant made the following offer of proof:

Q Whether or not at the time Mr. Myers had the—was laboring under such a defect of reason from disease or deficiency of the mind as to be incapable of knowing the nature and quality of his actions. Do you have an opinion as to that?

A Yes, I do.

Q What is your opinion?

A I know from my experience with working with Mr. Myers that he decompensates or gets worse, his symptomology is more expansive and greater when he's under the influence of alcohol and based upon what I've heard regarding his consumption that day and his level of intoxication, I don't believe that he could.

Q Okay. And do you have an opinion based on all of those same things as to whether Mr. Myers was, by reason of such defect of reason, incapable of distinguishing between right and wrong in relation to those actions at the time of this alleged offense?

A Yes, I do.

Q  What is your opinion as to that?.

A  That is, his judgment and impulse control would be so impaired that he would not have an awareness of right and wrong.

Defendant argues that an expert is allowed to testify about diminished mental capacity, and the ability "to make and carry out plans," *State v. Shank*, 322 N.C. 243, 248, 367 S.E.2d 639, 643 (1988), even though these opinions embrace legal terms and would "confuse, rather than help," the jury. *State v. Weeks*, 322 N.C. 152, 166-67, 367 S.E.2d 895, 904 (1988). He alleges that Ms. Carver was only asked whether she had an opinion as to whether defendant was suffering from a mental defect or disease at the time of the alleged commission of the offense which did or did not fit within the legal framework of the insanity defense in North Carolina.

The State argues that defendant was attempting to have Ms. Carver state an opinion as to whether defendant was legally insane, i.e., legally guilty or not within the M'Naghten rule, the legal test for insanity in North Carolina. A defendant in North Carolina can be exempt from criminal responsibility for an act by reason of insanity, if he is able to prove that at the time of the offense:

> he was laboring under such a defect of reason from disease or deficiency of mind as to be incapable of knowing the nature and quality of his act or, if he did know this, of distinguishing between right and wrong in relation to the act.

*State v. Bonney*, 329 N.C. 61, 78, 405 S.E.2d 145, 155 (1991); *see also State v. Frank*, 300 N.C. 1, 265 S.E.2d 177 (1980).

Our Courts have consistently held that (1) "even qualified expert witnesses may not give opinion testimony concerning legal terms that have specific meanings not readily apparent to the witness or that have definitions that vary from the common definition of the term," *State v. Brown*, 335 N.C. 477, 489, 439 S.E.2d 589, 596 (1994), and (2) expert opinion evidence is inadmissible when "it involved a conclusion that a legal standard had or had not been met. . . . 'That determination is for the finder of fact.' " *State v. Mash*, 328 N.C. 61, 65-66, 399 S.E.2d 307, 310-11 (1991) (citations omitted). In this action, Ms. Carver was asked her opinion on the M'Naghten rule, which is a legal term. There was no evidence in the record to indicate that the witness was qualified to make an assessment under that rule. Moreover, since defendant was seeking to have the witness state to the jury whether

the legal standard had been satisfied, thereby engaging in application of a legal standard, defendant's argument fails. Mental health experts are in no better position than the jury to determine whether a legal standard has been met. *Weeks*, 322 N.C. 152, 367 S.E.2d 895. As the M'Naghten rule is a legal standard, a question of whether its determination has been met is a question for the jury; thus, the trial court did not err. *Id.*

**[4]** Defendant next argues that the trial court erred in refusing to submit his requested instruction on the defense of insanity. We disagree.

Ms. Carver testified that she had counseled, diagnosed and treated defendant extensively during the spring and summer of 1994; that she reviewed reports and medical records from psychiatric and mental institutions which had treated him in the past, including records from Eastern State Mental Hospital, Tidewater Psychiatric Institute and Dorothea Dix Hospital in Raleigh, North Carolina; that defendant suffered from several different disorders including alcohol dependency and schizotypal disorder; that at the time of the alleged offense, defendant was experiencing an alcohol-induced blackout and his mental processes, as a result of the consumption of alcohol, was overcome to the extent that he had lost his capacity to think, plan or form any specific intent to do any particular act; and that defendant suffered from alcohol organicity and other mental disorders at the time of the alleged offense.

This testimony tended to show that defendant suffered from several different disorders including alcohol dependency, schizotypal disorder, and longstanding alcohol abuse resulting in organicity. According to defendant, these factors, when considered together with his alcohol abuse on the day of the offense, rendered defendant unable to form the requisite specific intent to commit the alleged offenses. Thus, defendant contends that the trial court's failure to give the requested instruction on the defense of insanity was in error.

Notwithstanding defendant's contention, in order for the requested instruction to be submitted to the jury, evidence of chronic or permanent insanity not induced by the voluntary ingestion of alcohol or drugs must exist. *See State v. Austin*, 320 N.C. 276, 357 S.E.2d 641, *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987). The State contends that defendant failed to produce evidence of chronic or permanent insanity, not produced by the voluntary consumption of alcohol, as there was no medical diagnosis of permanent or chronic incapaci-

tation of defendant's ability to distinguish right from wrong arising from a disease of the mind. Ms. Carver further testified that although she believed that defendant suffered from "organicity," she was unable to form a diagnosis "as to the organic difficulty." Moreover, the State contends that Ms. Carver's qualifications do not show that she was qualified to offer any medical diagnoses on insanity, either permanent or chronic, and that she admitted that any organic syndrome that may have been present was undiagnosable except upon autopsy. Finally, Ms. Carver's own notes of her visit with defendant shortly after his arrest reflected that "his affect was bright w/ normal mood. His thought process was clear and coherent."

Accordingly, as no evidence tended to show that defendant was suffering from any chronic or permanent insanity, the evidence did not warrant an instruction on the defense of insanity. *See State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980); *State v. Jones*, 293 N.C. 413, 238 S.E.2d 482 (1977). The trial court did not err in failing to instruct on the defense of insanity, as defendant's voluntary intoxication and his actions on the night in question did not justify an instruction on the defense of insanity pursuant to the M'Naghten rule. Therefore, this assignment of error is without merit.

[5] Defendant next argues that the trial court erred in failing to find factors in aggravation and/or mitigation for both offenses for which he was convicted and, therefore, erred in sentencing him to a term of years in excess of the presumptive fair sentencing, as separate findings of aggravating and mitigating factors are required to be made for each offense. This argument is also without merit.

The trial court completed and submitted only one form sheet listing the aggravating and mitigating factors, but a review of the transcript clearly reveals that the trial court stated "[t]hese aggravating factors go as to both the burglary and felonious larceny charge [and] as to mitigating factors to both charges. . . . "Thus, it is clear that the validity of the judgments and sentencing were sufficient pursuant to North Carolina General Statutes section 15A-1340.4 (1988) (repealed, effective 1 October 1994). The trial court considered the factors separately for each offense and simply announced the factors jointly. *See State v. Hall*, 81 N.C. App. 650, 652-53, 344 S.E.2d 811, 813, *petition for cert. dismissed as moot*, 318 N.C. 510, 349 S.E.2d 868 (1986) (finding that failure of trial judge to complete another aggravating and mitigating factor form sheet "was not a judicial error; it was but a minis-

terial oversight that did no prejudice to defendant."). Thus, this argument must fail.

For the reasons stated herein, we find that defendant received a fair trial, free from prejudicial error.

No error.

Judges LEWIS and MARTIN, MARK D. concur.