STATE OF NORTH CAROLINA v. ALMA JEAN ALLEN JOPLIN

No. 517A85

(Filed 29 August 1986)

**1. Homicide § 21.5— first degree murder—premeditation and deliberation—sufficiency of evidence**

The trial court did not err in denying defendant's motion to dismiss a first degree murder charge for insufficient evidence of premeditation and deliberation where the evidence tended to show that defendant and deceased were romantically involved; defendant told a friend only four days before the shooting that she was going to kill deceased if he did not leave another woman alone; she expressed to another friend suspicions of deceased's infidelity; after having been asked to leave a restaurant where she saw deceased and another woman together, defendant went home to get a gun and returned to wait for deceased, pursuing him after he left the restaurant; defendant urged him to stop so they could talk; when deceased went to defendant's car to talk with her, he was fatally wounded by her pistol; defendant told a friend she had shot deceased, and the friend overheard her say that deceased had been lying to her, she had taken all she could take, and deceased would hurt her no more; defendant also told another bystander she shot deceased because he told her he loved her and would marry her but he went with somebody else; and defendant repeatedly told a deputy sheriff that deceased had lied to her again and she shot him.

**2. Homicide § 28.8— accidental death—failure to include requested instruction—no plain error**

Even if the trial court in a first degree murder case erred in failing to include defendant's requested instruction on accident as a theory of acquittal in his final mandate to the jury, such error was not plain error, since the jury found defendant guilty of first degree murder; the trial court did instruct on accident as a theory of acquittal; and the trial judge gave defendant an opportunity to object for the record to any aspect of the jury instructions and this defendant failed to do.

**3. Homicide § 25— pistol as deadly weapon—killing unlawful and done with malice—no plain error in instructions**

Even if the trial court erred by juxtaposing in his jury instructions the proposition "that a .22 caliber pistol is a deadly weapon" with an instruction that if the jury found defendant intentionally killed deceased with a deadly weapon it could, but was not required to, infer that the killing was unlawful and was done with malice, such error was not plain error.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a life sentence imposed by *Barnette, J.,* presiding at the 10 June 1985 Criminal Session of PERSON County Superior Court, after a jury trial at which defendant was convicted of first degree murder.

*Lacy H. Thornburg, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

This appeal presents questions concerning the correctness of the trial judge's jury instructions and his denial of defendant's motion to dismiss the first degree murder charge for insufficient evidence of premeditation and deliberation. We find no merit in defendant's assignments of error and hold defendant had a fair trial free of reversible error.

I.

The evidence offered by the state tended to show the following: Defendant and decedent, Selvin Lee Jones, had been romantically involved since 1981 and had discussed marrying. At about 3 a.m. on 17 February 1985, Joplin became suspicious that Jones was seeing another woman when a woman telephoned saying Jones would not be home that night. That evening, Joplin went to the home of Douglas Owens, Jones' friend, to discuss the matter. Joplin carried the gun Jones had given her. On 18 February 1985 Joplin telephoned Thomas Whitt, who had been romantically involed with Cheryl Byrd, to ask if Byrd had been seeing Jones behind Joplin's back. Joplin told Whitt she would kill Jones if he continued to see Byrd.

At 1:45 a.m. on 22 February 1985, Joplin went to Jones' trailer and stayed with Jones until 4:30 a.m. when he left in his truck for work. Joplin followed in her car until she lost sight of Jones' truck. Later, Joplin observed Jones in his truck accompanied by Cheryl Byrd. Joplin followed the pair to the restaurant where Byrd worked as a waitress. When Joplin entered the restaurant, Byrd and Jones ordered her to leave.

Defendant went home, got her gun, and went back to find Jones. She waited in her car down the street from the restaurant. Jones left the restaurant in his truck at 5 a.m. to pick up Owens, his co-worker. After they left Owens' trailer en route for their job in Durham, Owens noticed Joplin following them in her car. She

flashed her lights on and off, passed them, and shouted at them to pull over. Jones pulled into the parking lot of the Country Convenience Mart and stopped. Owens went into the store. As he was preparing to leave the store, defendant ran towards him, saying, "Doug, I've shot Lee; I've shot Lee." Before the ambulance arrived, Owens heard Joplin say she had shot Jones, he had been lying to her, and he would hurt her no more.

Danny Denny, who knew Jones well, noticed Jones leaning into defendant's car. He heard a shot and saw Jones fall. Joplin got out of the passenger side of the car and ran to the driver's side, holding a gun. When Denny asked defendant why she had shot Jones, she replied Jones had told her he loved her and would marry her, but then he went with someone else. Denny later heard defendant tell a deputy sheriff she had shot Jones.

The deputy sheriff at the scene, Steve Hodges, corroborated Denny's version of the events, saying defendant repeated the statement (that Jones lied to her and she shot him) three or four times.

An autopsy revealed Jones died as a result of a bullet wound, the bullet having entered his body at the top of the breastbone and passed down through the heart and into the diaphragm. Had Jones been leaning over when shot, the bullet would have traveled horizontally through his body.

Defendant's testimony tended to show:

She was distressed over Jones' possible infidelity and had contemplated suicide. Twice during the week preceding Jones' death defendant had written suicide notes to her two sons and Jones. She expressed these feelings to Owens, telling him she had a gun and pills.

Joplin went back to the restaurant not to kill Jones but to tell him once more that she loved him before killing herself. Once they arrived at the Country Convenience Mart, Joplin and Jones talked. Joplin said she could not "take it any longer," picked up the gun and aimed it at her chest. Jones, intending to prevent her suicide, grabbed her arm as she fired, causing her to shoot Jones instead of herself. Joplin never intended to shoot Jones. As she was running around to the other side of the car to where Jones lay, she pointed the gun at herself and pulled the trigger, but for

some unknown reason the gun did not fire. Defendant denied ever telling anyone she planned to kill Jones.

Defendant argues in her appeal that Judge Barnette erred in (1) failing to dismiss the first degree murder charge for insufficient evidence of premeditation and deliberation; (2) failing to instruct the jury on the theory of accident during his final mandate; and (3) instructing the jury that they could infer the killing was done with malice if they found defendant killed the deceased with a deadly weapon. We find no merit in any of defendant's contentions.

II.

[1] Defendant first contends the trial court erred in denying her motion to dismiss the first degree murder charge for insufficient evidence of premeditation and deliberation. Defendant's contention is without merit.

On a motion to dismiss for insufficiency of evidence, the trial court must consider all evidence, whether circumstantial or direct, in the light most favorable to the state and give the state every reasonable inference drawn therefrom. *State v. Primes*, 314 N.C. 202, 217, 333 S.E. 2d 278, 287 (1985). The court must determine whether there is substantial evidence of each essential element of the offense, including defendant's role as perpetrator. *State v. Triplett*, 316 N.C. 1, 5, 340 S.E. 2d 736, 739 (1986). Substantial evidence in a criminal case is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion beyond a reasonable doubt. *See generally, State v. Pridgen*, 313 N.C. 80, 326 S.E. 2d 618 (1985); *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981); *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980).

In *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177 (1983), we defined the elements of premeditation and deliberation as follows:

Premeditation means thought out beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). Deliberation means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an

unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982); *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769, *cert. denied*, 368 U.S. 851 [7 L.Ed. 2d 49] (1961). The term 'cool state of blood' does not mean that the defendant must be calm or tranquil or display the absence of emotion; rather, the defendant's anger or emotion must not have been such as to overcome the defendant's faculties and reason. *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). Premeditation and deliberation refer to processes of the mind. They are not ordinarily subject to proof by direct evidence, but must generally be proved, if at all, by circumstantial evidence. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). Among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner. *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Fountain*, 282 N.C. 58, 191 S.E. 2d 674 (1972); *State v. Walters*, 275 N.C. 615, 170 S.E. 2d 484 (1969).

*Id.* at 68-69, 301 S.E. 2d at 348-49. The state's evidence tended to show defendant told Thomas Whitt only four days before the shooting that she was going to kill Jones if he did not leave Cheryl Byrd alone. She also expressed to Douglas Owens suspicions of Jones' infidelity. After having been asked to leave the restaurant where she saw Jones and Byrd together, she went home to get a gun and returned to wait for Jones, pursuing him after he left the restaurant. She urged him to stop so they could talk. When Jones went to defendant's car to talk with her, he was fatally wounded by her pistol. Defendant told Owens she had shot Jones, and Owens overheard her say Jones had been lying to her, she had taken all she could take, and Jones would hurt her no

more. Defendant also told another bystander she shot Jones because he told her he loved her and would marry her but he went with somebody else. She repeatedly told a deputy sheriff Jones had lied to her again and she shot him.

When viewed in the light most favorable to the state, the evidence of Joplin's conduct and threatening statements both before and after the killing was strong evidence of premeditation and deliberation. "Contradictions and discrepancies in the evidence are strictly for the jury to decide." *State v. Lowery,* 309 N.C. 763, 766, 309 S.E. 2d 232, 235-36 (1983). The evidence was sufficient to permit the jury to find premeditation and deliberation beyond a reasonable doubt.

## III.

[2] Defendant next contends Judge Barnette committed reversible error in failing to include her requested instruction on accident as a theory of acquittal in his final mandate to the jury. We disagree.

Our examination of the record shows Judge Barnette instructed the jury as follows, in pertinent part:

So I charge that if you find from the evidence one additional thing: If Selvin Lee Jones died by accident or misadventure, that is without wrongful purpose or criminal negligence on the part of the defendant, the defendant would be not guilty.

The burden of proving accident is not on the defendant. Her assertion of accident is merely a denial that she has committed any crime.

The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt.

Those instructions immediately preceded the final mandate, which included a possible verdict of not guilty, explained thus:

However, if you do not so find or if you have a reasonable doubt as to one or more of these things, then it would be your duty to return a verdict of not guilty.

After the jurors retired to deliberate, Judge Barnette provided an opportunity for each counsel to object for the record to any

aspect of the jury instructions. Both the prosecutor and defense counsel declined.

The state thus argues defendant waived appellate review on this issue by failing to interpose a timely objection. We agree. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides: "No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict . . . ." *Id.* This Court, however, mitigated the rule's harshness by adopting "the 'plain error' rule . . . used by the federal courts pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure which states that '[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Odom,* 307 N.C. 655, 660, 300 S.E. 2d 375, 378 (1983). We said in *State v. Walker,* 316 N.C. 33, 340 S.E. 2d 80 (1986):

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom,* 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant. *State v. Black,* 308 N.C. [736] at 741, 303 S.E. 2d [804] at 806-07. Therefore, the test for 'plain error' places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection. *Cf.* N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).

*Id.* at 39, 340 S.E. 2d at 83-84. *See State v. Tucker,* 317 N.C. 532, 346 S.E. 2d 417 (1986).

Inasmuch as the jury found defendant guilty of first degree murder and the trial court instructed on accident as a theory of acquittal, we are not convinced the result of this trial would have been different had the trial court repeated the theory of acquittal

by accident in his first mandate. This omission, even if error (a point we do not decide), is obviously not plain error.

## IV.

[3] In defendant's final assignment of error, she contends Judge Barnette erred by juxtaposing in his jury instructions the proposition "that a .22 caliber pistol is a deadly weapon" with an instruction that if the jury found defendant intentionally killed the deceased with a deadly weapon it could, but was not required to, infer that the killing was unlawful and was done with malice. Defendant concedes that it is constitutionally permissible to instruct on the permissive inference; but she seems to argue that this instruction coupled immediately with an instruction that a .22 caliber pistol is a deadly weapon is tantamount to an expression of opinion on the part of the trial judge that the state has in fact proved the elements of malice and unlawfulness.

Again, defendant did not object to this portion of the instructions. Even if the instructions as cast were error (a point we do not decide), we are not convinced that absent this error the jury probably would have reached a different verdict in this case. Therefore, no plain error was committed.

We conclude that defendant had a fair trial free of reversible error.

· No error.