STATE OF NORTH CAROLINA v. HERBERT BARTON, JR.

No. 210A92

(Filed 4 March 1994)

1. **Homicide § 677 (NCI4th)— premeditation and deliberation — diminished capacity — specific causes — sufficiency of instruction**

The trial court did not commit plain error in its instructions on lack of mental capacity as a factor tending to negate the specific intent required for first-degree murder by failing to include in its instructions the specific causes of "mental illness and mental retardation or borderline intellectual functioning" when there was evidence that defendant's impairment resulted from these causes. The trial court delivered the appropriate pattern jury instruction on this issue, which lists examples of factors that could contribute to a diminished legal capacity, and the trial court's instructions were of sufficient particularity to enable the jury to understand the law on lack of mental capacity and to apply it to the evidence presented on that issue.

**Am Jur 2d, Homicide § 515.**

**2. Evidence and Witnesses § 2302 (NCI4th)— premeditation and deliberation—diminished capacity—exclusion of cumulative evidence**

The trial court in a first-degree murder prosecution did not err by sustaining the prosecutor's objection to defense counsel's question seeking to elicit from defendant's psychiatric expert testimony that defendant had a limited capacity to plan and a limited capacity "to carry out something in accordance with the plan" where defendant had previously been allowed to place before the jury considerable evidence that his diminished mental capacity adversely affected his ability to make and carry out plans, since the trial court's action was merely an exclusion of cumulative evidence and was consistent with N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Expert and Opinion Evidence §§ 193, 194, 362, 363.**

**Admissibility of expert testimony as to whether accused had specific intent necessary for conviction. 16 ALR4th 666.**

**3. Robbery § 126 (NCI4th)— armed robbery—instructions—acting in concert—intent**

The trial court's instructions on acting in concert as they applied to a charge of armed robbery did not amount to plain error where they could only have been understood by the jury to allow conviction of the defendant for armed robbery if the defendant himself acted alone or together with the others and the defendant himself intended that the robbery from the victim result from such action.

**Am Jur 2d, Robbery §§ 71 et seq.**

**4. Robbery § 88 (NCI4th)— armed robbery—acting in concert—sufficiency of evidence**

The evidence supported the trial court's instruction permitting the jury to convict defendant of armed robbery on the basis of acting in concert where the evidence tended to show that defendant, his brother and a third person waited for the victim at the murder scene together, where defendant shot and killed the victim; still holding a shotgun, the defendant stood by while his brother and the third person took the victim's wallet from his pocket; they then went to the victim's car, where the third person found the victim's pistol and gave

STATE v. BARTON

[335 N.C. 696 (1994)]

it to the defendant; the defendant took the pistol and then drove the victim's car away from the scene; and the defendant, his brother and the third person thereafter each took steps to conceal evidence which would point to their participation in the crimes committed against the victim.

**Am Jur 2d, Robbery §§ 62 et seq.**

5. **Homicide § 439 (NCI4th) — intentional use of deadly weapon — insufficiency to show premeditation and deliberation — failure to instruct**

The trial court did not commit plain error by failing to expressly instruct the jury that while the intentional use of a deadly weapon may give rise to a presumption that a killing was malicious, it will not alone sustain a finding of premeditation and deliberation.

**Am Jur 2d, Homicide § 509.**

6. **Evidence and Witnesses § 2907 (NCI4th) — redirect testimony — new matter — discretion of court**

The trial court did not abuse its discretion in allowing a witness to testify on redirect examination in a first-degree murder trial about her encounter with defendant the night following the murder because the testimony went beyond the scope of her testimony during direct and cross-examination where the testimony was relevant and otherwise admissible, and the trial court provided the defendant an opportunity to recross-examine the witness about her new testimony.

**Am Jur 2d, Witnesses §§ 737 et seq.**

7. **Evidence and Witnesses § 712 (NCI4th) — objection to testimony sustained — court's failure to strike and give curative instruction**

The trial court did not err by failing to strike a witness's testimony in a first-degree murder trial that defendant's accomplice had stated that "*they* had shot the man" and by failing to give a curative instruction where the trial court sustained defendant's objection to the testimony; defendant failed to move to strike the objectionable testimony and thus waived his right to assert error on appeal; defendant made no request for a curative instruction; and there was no prejudice because the jury had previously heard defendant's con-

fession that he had shot the victim in the head and "didn't care what [he had] done."

**Am Jur 2d, Trial §§ 1478-1485.**

8. **Evidence and Witnesses § 1652 (NCI4th)— photographs showing defendant in handcuffs—admission for illustrative purposes—no abuse of discretion**

The trial court did not abuse its discretion in a first-degree murder trial by admitting for illustrative purposes a color photograph of defendant and two others standing handcuffed next to a sheriff's deputy in the area where the victim's car was found and a color photograph of defendant and others walking across a field near the location of the car where the trial court determined that the photographs would assist law officers in illustrating their testimony about the assistance given them by the defendant in locating items of evidence; the photographs were not used excessively or repetitiously; and the trial court gave a limiting instruction and also instructed the jury that the fact that a photograph may depict the defendant in handcuffs is no evidence of his guilt.

**Am Jur 2d, Evidence § 785.**

9. **Constitutional Law § 318 (NCI4th)— meritless issues— submission under Anders v. California—inappropriate where other assignments argued**

It was inappropriate for defense counsel to present three meritless additional issues to the Supreme Court for its own review in light of *Anders v. California*, 386 U.S. 738, where counsel for defendant has vigorously argued twelve assignments of error, since *Anders* applies only to cases that appointed counsel determines to be *wholly* without merit. If counsel determines that an assignment of error is without merit, he or she should either present it only as a preservation issue or omit it entirely from the argument on appeal.

**Am Jur 2d, Criminal Law §§ 752, 985-987.**

10. **Criminal Law § 409 (NCI4th)— capital sentencing—limiting each counsel to one argument—prejudicial error**

The trial court committed prejudicial error by limiting each counsel for the defendant to one argument to the jury

at the conclusion of defendant's capital sentencing proceeding. N.C.G.S. § 84-14.

**Am Jur 2d, Trial §§ 547 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Allen (J.B.), J., on 5 June 1992, in the Superior Court, Robeson County, sentencing the defendant to death for first-degree murder. The defendant's motion to bypass the Court of Appeals on his appeal from an additional judgment for robbery with a dangerous weapon was allowed by the Supreme Court on 6 May 1993. Heard in the Supreme Court on 14 October 1993.

*Michael F. Easley, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Richard B. Glazier for the defendant-appellant.*

MITCHELL, Justice.

On 20 May 1991, a Robeson County Grand Jury indicted the defendant for first-degree murder, robbery with a dangerous weapon, felonious larceny, larceny of a firearm and conspiracy to commit murder. The defendant was tried capitally at the 18 May 1992 Criminal Session of Superior Court, Robeson County. The trial court dismissed the conspiracy charge at the close of the State's evidence. The jury returned verdicts finding the defendant guilty of first-degree murder, robbery with a dangerous weapon, felonious larceny and larceny of a firearm.

At the conclusion of a separate capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder and the trial court sentenced the defendant in accord with the jury's recommendation. The trial court also sentenced the defendant to imprisonment for fourteen years for robbery with a dangerous weapon and continued prayer for judgment for five years on the two larceny convictions. The defendant appealed to this Court as a matter of right from the judgment sentencing him to death for first-degree murder. *See* N.C.G.S. § 7A-27(a) (1989). We allowed his motion to bypass the Court of Appeals on his appeal from the judgment for robbery with a dangerous weapon.

The evidence presented at the defendant's trial tended to show the following. Around 6:00 p.m. on 8 February 1991, the defendant shot Harold Craven in the back of the head with a shotgun because,

**STATE v. BARTON**

[335 N.C. 696 (1994)]

as the defendant said, he had "been wanting to shoot somebody for about two weeks." It was Mr. Craven's custom in the evenings to drive to an area of Maxton, North Carolina, where several garbage dumpsters and a couch were located, in order to sit and think. The defendant had seen Mr. Craven at the dumpsters two nights prior to the murder and had attempted to kill him then. However, the shotgun the defendant was using, which he described as his "old shotgun that had tape on the barrel," failed to fire. One of the defendant's accomplices, Michael Emanuel, procured another shotgun, and the defendant returned to the dumpsters with that shotgun on the evening of 8 February 1991. Present with the defendant were Michael Emanuel and the defendant's younger brother, Heath Barton. All three were waiting for Mr. Craven when he arrived. Mr. Craven got out of his car and was looking around when the defendant shot him. The victim fell to the ground and Emanuel and the defendant's brother moved forward and took his wallet. Emanuel and the defendant drug the victim's body into a patch of woods adjacent to the dumpsters and covered it with leaves and brush. They then returned to the victim's car, from which Emanuel took a .25-caliber pistol belonging to Mr. Craven and gave it to the defendant.

The defendant and the others drove off in the victim's car with the defendant at the wheel. Later, the defendant parked the car in a patch of woods near the defendant's mobile home. After sweeping the ground around the car, they ran to the mobile home. Emanuel and the defendant's brother tossed the murder weapon into a ditch behind the mobile home. The defendant hid the victim's .25-caliber pistol behind a stump. The three then went to buy beer, cocaine, marijuana and knives.

Local sheriff's deputies approached the defendant at his mobile home two days later. After receiving the Miranda warnings and signing a waiver form, the defendant stated to the deputies that he had killed Mr. Craven. The defendant then helped the deputies locate the .25-caliber pistol and other items of evidence. The deputies found the murder weapon in the ditch where Emanuel and the defendant's brother had hidden it and found the shotgun with tape around the barrel inside the mobile home.

The deputies then arrested the defendant and took him to the sheriff's department. After receiving the Miranda warnings a second time, the defendant confessed. He also stated that he, his

brother and Emanuel had "all wanted to shoot somebody" and "didn't care who it was." The defendant explained that he "was mad and didn't care what [he had] done." He said he "would have shot anybody that drove up there that night."

Other pertinent facts will be introduced in the discussion of the assignment of error to which they are relevant.

## I. Guilt Phase

**[1]** By an assignment of error regarding the guilt-innocence determination phase of his trial, the defendant contends that the trial court erred in its instructions on lack of mental capacity as a factor tending to negate the specific intent required for first-degree murder. Specifically, the trial court instructed the jury that if it found "that [the] defendant was intoxicated or drugged or lacked mental capacity at the time of the killing, [it] should consider whether this condition affected his ability to formulate the specific intent which is required for conviction of first-degree murder." The defendant complains that there was substantial evidence that his impairment "was caused by mental illness and mental retardation or borderline intellectual functioning," yet the trial court did not include these causes in its instructions. The defendant insists that the trial court's omission of these causes suggested to the jury that these causes were not sufficient to allow for a finding of lack of specific intent. The defendant contends that the trial court thereby "impaired the jury's consideration of the diminished capacity defense" in violation of the defendant's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States.

The defendant admits, however, that he did not object to the instructions or request more specific instructions. This assignment of error is therefore barred by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and the defendant is not entitled to relief unless any error constituted plain error. *See State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983). We have previously explained that to rise to the level of plain error, the error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). Stated another way, the error must be one "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would

have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Having reviewed the trial court's instructions on lack of mental capacity under this standard, we find no plain error. The trial court delivered the appropriate pattern jury instruction on this issue, which lists examples of factors that could contribute to a diminished mental capacity. *See* N.C.P.I.—Crim. 305.11 (1986). As the defendant himself recognizes, the trial court was not required to provide the jury with an exhaustive list of all possible factors that could have contributed to his diminished mental capacity. Indeed, "[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). The instructions given in the case at bar were of sufficient particularity to enable the jury to understand the law on lack of mental capacity and apply it to the evidence presented on that issue. No more was required of the trial court. We therefore cannot say that the trial court committed plain error. This assignment of error is without merit.

[2] By another assignment of error, the defendant insists that the trial court erred by sustaining an objection to a question his counsel posed to Dr. Thomas W. Brown, the defendant's psychiatric expert. Near the close of Dr. Brown's testimony on direct examination, counsel for the defendant asked Dr. Brown the following question:

> [B]ased on your education, training and experience, and based on the several diagnoses that you made or diagnoses [the defendant] is suffering from, do you have an opinion satisfactory to yourself as to the impact of all those different diagnoses on his ability to plan?

The prosecution objected and the trial court sustained the objection on the ground that Dr. Brown had previously "answered that question." The defendant then made an offer of proof during which Dr. Brown testified that "the combination of those would severely limit [the defendant's] capacity to plan" and his capacity to "carry out something in accordance with the plan."

The defendant maintains that the question he posed to Dr. Brown was "directly related to a critical issue in the case" and

STATE v. BARTON

[335 N.C. 696 (1994)]

was "proper under existing law." The defendant contends that, contrary to the trial court's ruling, the question did not call for cumulative testimony. He therefore argues that he is entitled to a new trial under our opinion in *State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). We disagree.

In *Shank*, we held that the trial court committed prejudicial error by excluding the testimony of the defendant's psychiatric expert that, in his opinion, the "defendant's diminished mental capacity adversely affected his ability to make and carry out plans." We reasoned that because (1) the testimony would have tended to show that the defendant lacked the capacity to premeditate or deliberate, (2) the North Carolina Rules of Evidence allow opinion testimony embracing an ultimate issue, *see* N.C.G.S. § 8C-1, Rule 704 (1992), and (3) the testimony was otherwise admissible, the trial court erred in excluding the doctor's opinion. *Shank*, 322 N.C. at 249, 367 S.E.2d at 643. Since there was a reasonable possibility that a different result would have been reached had the trial court not committed this error, the error was prejudicial and entitled the defendant to a new trial. *Id. See also* N.C.G.S. § 15A-1443(a) (1988).

In the present case, we assume *arguendo* that the question was proper as to form and that the tendered answer was not expressly made inadmissible by any rule of evidence. Unlike the defendant in *Shank*, however, the defendant in the case at bar was allowed to place before the jury considerable evidence that his diminished mental capacity adversely affected his ability to make and carry out plans. Prior to the question at issue, Dr. Brown had testified that: (1) the defendant's capacity "for being able to plan" was limited, (2) the defendant "would have been significantly, substantially impaired" at the time of the murder, (3) the defendant's "ability to make plans or think things out" was "definitely limited" and (4) the defendant "draws conclusions about what [it] is possible to do or what [it] makes sense to plan on doing in ways that are unrealistic or don't make sense." The additional testimony the defendant attempted to elicit from Dr. Brown that the defendant had a limited capacity to plan and a limited capacity to "carry out something in accordance with the plan" would have added little, if anything, to the testimony he had already given.

North Carolina Rule of Evidence 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste

of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). By sustaining the prosecutor's objection to the ·question at issue, the trial court in the case at bar did nothing more than exclude cumulative evidence. The trial court's action, therefore, was consistent with Rule 403 and did not constitute error. Accordingly, we overrule this assignment of error.

By another assignment of error the defendant contends that he is entitled to a new trial on the charge of robbery with a dangerous weapon because the trial court erred in instructing the jury on the theory of acting in concert as it applied to that charge. The trial court instructed the jury, in pertinent part, as follows:

> [F]or a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together *with a common purpose to commit robbery with a firearm*, each of them is held responsible for the acts of the others done in the commission of robbery with a firearm.

> So I charge you that if you find from the evidence beyond a reasonable doubt that on or about February 8, 1991, the defendant, Herbert Barton, Jr., acting either by himself or acting together with Heath Barton and Michael Emanuel, had in their possession a firearm and took and carried away property from the person or presence of a person without his voluntary consent by endangering or threatening his life with use or threatened use of a firearm, *the defendant* knowing that he was not entitled to take the property and *intending to deprive him of its use permanently*, then it would be your duty to return a verdict of guilty of robbery with a firearm.

> However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty in case 91 CRS 3025.

(Emphasis added). This instruction was taken nearly verbatim from the North Carolina Pattern Jury Instructions. *See* N.C.P.I.—Crim. 202.10 (1971). The defendant did not object to this instruction at trial, nor did he request an additional instruction. Therefore, our review is limited to a review for plain error. *State v. Joplin*, 318 N.C. 126, 132, 347 S.E.2d 421, 425 (1986); *Odom*, 307 N.C. at 659-60, 300 S.E.2d at 378.

**STATE v. BARTON**

[335 N.C. 696 (1994)]

**[3]**  The defendant first argues that the instructions given by the trial court amounted to plain error because the jury was not informed that to convict the defendant of the robbery it must first find from the evidence that he specifically intended that the robbery occur and communicated to the perpetrators his intent to assist them with the commission of that crime, if necessary. We do not agree. Instead, we conclude that the instruction complained of could only have been understood by the jury to allow conviction of the defendant for robbery with a dangerous weapon *if the defendant himself* acted alone or together with the others and *the defendant himself* intended that the robbery from the victim result from such action.

**[4]**  The defendant also argues in support of this assignment of error that no evidence was introduced at trial to support a reasonable finding that he acted in concert with his brother and Emanuel to commit the robbery with a dangerous weapon. Therefore, he contends that the trial court erred in giving any instruction permitting the jury to convict him of that robbery on the basis of the doctrine of acting in concert. We find this argument feckless.

Overwhelming evidence tended to show that the defendant, his brother and Emanuel waited for the victim at the murder scene together, where the defendant shot and killed the victim. Still holding the shotgun, the defendant stood by while his brother and Emanuel took the victim's wallet from his pocket. They then went to the victim's car, where Emanuel found the victim's pistol and gave it to the defendant. *The defendant* took the pistol, then drove the victim's car away from the scene. Thereafter, the defendant, his brother and Emanuel each individually took steps to conceal evidence which would point to their participation in the crimes committed against the victim. Such evidence was more than sufficient to support the conviction of the defendant for robbery with a dangerous weapon, either on the theory that he acted in concert with the others or on the theory that he himself robbed the victim. Accordingly, we conclude that the trial court did not commit plain error and overrule this assignment of error.

**[5]**  By another assignment of error, the defendant argues that the trial court should have instructed the jury that while the intentional use of a deadly weapon may give rise to a presumption that a killing was malicious, it will not alone sustain a finding of premeditation or deliberation. *See State v. Zuniga*, 320 N.C.

233, 258, 357 S.E.2d 898, 914, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987) ("[w]hile the intentional use of a deadly weapon may, in and of itself, give rise to a presumption that a killing was malicious, . . . this is insufficient to sustain a finding of premeditation and deliberation"). The defendant maintains that the trial court's failure to expressly so instruct the jury may have allowed the jury to infer, in violation of *Zuniga*, that the intentional use of a deadly weapon "was tantamount to premeditation and deliberation."

The defendant did not object to the instructions given and did not request additional instructions. He therefore is entitled to relief only if the trial court committed plain error.

The trial court properly instructed the jury on the elements of first-degree murder in accordance with the North Carolina Pattern Jury Instructions. *See* N.C.P.I. — Crim. 206.10 (1989). The trial court is not required to instruct the jury "with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). The trial court's instructions in the case at bar were of sufficient particularity to enable the jury to understand the law with regard to first-degree murder and apply it to the evidence bearing upon the elements of that charge in the present case. We therefore conclude that the defendant has failed to establish plain error in this regard and we reject this assignment of error.

[6] By his next assignment of error, the defendant maintains that the trial court erred in allowing the State to elicit testimony from a witness on redirect examination that went beyond the scope of the witness' testimony during direct and cross-examination. On direct examination, the witness, Ms. Winnie Jacobs, testified that she lived near the defendant in February of 1991. She took the defendant, the defendant's brother and Michael Emanuel "uptown" around 7:30 or 8:00 p.m. on 8 February 1991, the night of the murder. While uptown, she drove the three boys to various locations where they bought gas, cigarettes, knives, beer and ice, and the defendant did not appear to be intoxicated at the time. On cross-examination, Ms. Jacobs again stated that she drove the defendant and the two others uptown around 7:30 or 8:00 p.m. on 8 February 1991. On redirect examination, Ms. Jacobs testified over the defendant's objection about an encounter with the defend-

ant on the night of 9 February 1991, the night following the murder. She explained that the defendant came to her house around 8:00 p.m., that "he acted scared" and that he had mud on his shoes. She also testified that the defendant told her "that he had been running in the woods" and "that the laws was after him." Ms. Jacobs then took the defendant back to his mobile home.

The defendant contends that the trial court erred in allowing Ms. Jacobs to testify about her encounter with the defendant on 9 February 1991 because the testimony went beyond the scope of her testimony during direct and cross-examination. He further argues that the error was prejudicial because Ms. Jacobs' testimony on redirect examination "had the reasonable possibility of suggesting to the jury that the defendant was able to formulate and carry out complex plans, including evasion of law enforcement officers." He therefore insists that he is entitled to a new trial. We disagree.

It is well established that "the calling party is ordinarily not permitted . . . to question the witness on entirely new matters" on redirect examination. *State v. Weeks*, 322 N.C. 152, 169, 367 S.E.2d 895, 905 (1988). However, the decision whether to allow testimony on redirect examination involving matters beyond the scope of the witness' testimony on direct and cross-examination is a matter left to the sound discretion of the trial court. *See State v. Waters*, 308 N.C. 348, 354, 302 S.E.2d 188, 192 (1983) ("the trial judge ha[s] within his discretion the authority to permit the State to introduce new evidence on re-direct examination"). *See also* N.C.G.S. § 8C-1, Rule 611(a) (1992) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."); N.C.G.S. § 15A-1226(b) (1988) ("The judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict."). The testimony at issue here was relevant and otherwise admissible. Further, after its admission, the trial court provided the defendant an opportunity to recross-examine the witness—an opportunity of which the defendant did not avail himself. We conclude that the trial court did not abuse its discretion. Accordingly, this assignment of error is without merit.

**[7]** The defendant contends by another assignment of error that the trial court erred in failing to strike certain testimony of a State's witness and in failing to give the jury a curative instruction with regard to that testimony. The witness, Vashon Locklear, an acquaintance of the defendant who was charged with conspiracy in this matter, testified about a meeting he had with the defendant, the defendant's brother and Michael Emanuel on the day following the murder of Harold Craven. Over the defendant's objection, Locklear testified that he had asked them whether they had "shot the old man." When asked by the prosecutor whether any of the three had responded, Locklear answered: "I believe Michael said that they had shot the man." The defendant objected and the trial court sustained the objection. The defendant neither moved to strike Locklear's testimony nor requested a curative instruction. Nevertheless, he now contends that the trial court should have taken these actions *sua sponte* because merely sustaining the defendant's objection was "insufficient to cure the tremendously damaging statement of Michael Emanuel that 'they had shot the man.' ". We disagree.

We recently rejected a nearly identical contention in *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991). In *Quick*, an SBI agent testified that an ashtray found in the victim's home bore the defendant's fingerprint. He then testified that he had asked a fellow agent, Agent Duncan, to verify this fingerprint identification and that Agent Duncan had "agreed with the identification." The defendant objected and the trial court sustained the objection. On appeal, the defendant argued that he was entitled to a new trial because the testifying SBI agent had introduced highly prejudicial inadmissible hearsay.

In rejecting this contention, we explained that: (1) "where the trial court sustains [the] defendant's objection, he has no grounds to except," (2) by failing to move to strike the objectionable testimony, the defendant waived his right to assert error on appeal and (3) there was no prejudice in any event because the testifying agent had given his own opinion that the fingerprint was that of the defendant and the trial court had sustained the defendant's objection to the corroborating opinion of Agent Duncan. *Id.* at 29, 405 S.E.2d at 196. Similarly, in the case *sub judice* the trial court sustained the defendant's objection and the defendant failed to move to strike the objectionable testimony. He therefore has waived his right to assert on appeal error arising from Vashon Locklear's

objectionable testimony. Further, the defendant has not shown prejudice since prior to Locklear's testimony, the jury heard the defendant's own confession to law enforcement officers that he had shot the victim in the head and "didn't care what [he had] done."

We have also recently rejected a defendant's contention that the trial court should have given the jury a curative instruction *sua sponte*. We plainly stated in *State v. Williamson*, 333 N.C. 128, 139, 423 S.E.2d 766, 772 (1992), that "[a] trial court does not err by failing to give a curative jury instruction when, as here, it is not requested by the defense." As the defendant in the case at bar did not request a curative instruction, the trial court did not err by failing to give one. The trial court thus took sufficient action by sustaining the defendant's objection and was not required either to strike the testimony or to give a curative jury instruction. Accordingly, we overrule this assignment of error.

**[8]** By another assignment of error, the defendant argues that the trial court erred in allowing the State to introduce two photographs into evidence. The first was an 8 by 10 inch color photograph of the defendant, the defendant's brother and Michael Emanuel standing handcuffed next to a sheriff's deputy in the area where the victim's car was found. The second was an 8 by 10 inch color photograph of the defendant and the others walking, with their backs to the camera, across a field near the location of the car. The trial court admitted the two photographs for the limited purpose of illustrating the testimony of law enforcement officers regarding the assistance given them by the defendant in locating various items of evidence. The trial court expressly instructed the jury that it was to consider the photographs only for this limited purpose. The trial court also instructed the jury that "the fact that a photograph may depict [the defendant] in handcuffs is no evidence at all of his guilt." The defendant contends that (1) the photographs were not relevant and (2) even assuming the photographs had some probative value, that value "was substantially outweighed by the prejudicial effect of the jury seeing the defendant handcuffed." He therefore insists that he is entitled to a new trial. We disagree.

Photographs of the sort at issue here "may be introduced 'so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.'" *State v. Stager*, 329 N.C. 278, 308, 406 S.E.2d 876, 893 (1991) (quoting *State v. Hennis*, 323

STATE v. BARTON

[335 N.C. 696 (1994)]

N.C. 279, 284, 372 S.E.2d 523, 526 (1988) ). Further, "[w]hether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each . . . lies within the discretion of the trial court." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. An abuse of discretion exists "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* We find no abuse of discretion here. The photographs were used neither excessively nor repetitiously. Only two photographs were introduced, and the trial court determined that they would assist the law enforcement officers in illustrating their testimony regarding the assistance given them by the defendant in locating items of evidence. In addition, the trial court gave the jury a limiting instruction and emphasized to the jury that "the mere fact that [the defendant] is in handcuffs [in the photographs] is no evidence of guilt whatsoever." We therefore conclude that the trial court did not abuse its discretion and over-rule this assignment of error.

[9] The defendant raises three additional issues which, after a "thorough review of the record, including all relevant precedent," he concedes are without merit but, nevertheless, tenders to this Court for its own review in light of *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, *reh'g denied*, 388 U.S. 924, 18 L. Ed. 2d 1377 (1967). The three issues are: (1) the trial court erred in denying the defendant's motion to suppress his pretrial statement to law enforcement officers, (2) the trial court's findings and conclusion to the effect that the defendant made his pretrial statement to law enforcement officers voluntarily and knowingly were not supported by the evidence presented at the suppression hearing and (3) the trial court erred in denying the defendant's motions to dismiss all charges and to set aside the verdicts due to the insufficiency of the evidence to support these charges.

We first emphasize that the defendant's approach "is inappropriate in this situation because *Anders* . . . generally applies only where counsel believes the *whole appeal* is without merit." *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991) (emphasis added). *Anders* holds that appointed counsel must "support his client's appeal to the best of his ability" and "if counsel finds his case to be *wholly frivolous*, after a conscientious examination of it, he should so advise the court and request permission to *withdraw*" and accompany that request with a brief "referring

to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498 (emphasis added). By its use of the term "wholly frivolous" and its discussion of withdrawal by appointed counsel, the Supreme Court of the United States clearly contemplated application of its *Anders* opinion only to cases that appointed counsel determines to be *wholly* without merit. In the case at bar, however, counsel for the defendant has vigorously argued twelve assignments of error, indicating his belief that the defendant's appeal is not wholly without merit. It is therefore inconsistent and inappropriate for defense counsel to present three meritless additional issues to this Court for its own review in light of *Anders*.

Apart from the language of *Anders*, we also note that among the responsibilities of counsel representing a criminal defendant on appeal is the duty to carefully review the assignments of error, separate those of arguable merit from those without merit and assert the former on appeal. If counsel, during the course of this review, determines that an assignment of error is without merit, he or she should either present it only as a preservation issue or omit it entirely from his or her argument on appeal, thereby allowing the appellate court to focus its attention and expend its judicial resources on those issues about which a genuine controversy exists. The submission, as in the case at bar, of isolated "*Anders* issues" for the appellate court to research is not a viable course of action. Nevertheless, we have reviewed the record with regard to these assignments and have found no error. These three assignments of error are therefore without merit.

For the foregoing reasons, we find no error in the guilt phase of the defendant's trial.

## II. Capital Sentencing Proceeding

[10] By another assignment of error, the defendant contends that the trial court erred by limiting each counsel for the defendant to one argument at the conclusion of the defendant's capital sentencing proceeding. The defendant argues that the trial court's action violated N.C.G.S. § 84-14, N.C.G.S. § 15A-2000(a)(4), and his constitutional rights to a fair trial, due process of law and freedom from cruel and unusual punishment. We conclude that the trial court erred and that the defendant must receive a new capital sentencing proceeding.

STATE v. BARTON

[335 N.C. 696 (1994)]

At the charge conference prior to closing arguments in the capital sentencing proceeding, the following dialogue took place between the trial court and the two counsel for the defendant:

THE COURT: All right. Now, who will take the last argument?

MR. DAVIS: I will.

. . . .

THE COURT: . . . And when will you argue Mr. Rogers, before [the District Attorney] Mr. Townsend or after Mr. Townsend?

(Counsel for the defendant confer.)

MR. ROGERS: Your Honor, just for tentative — and, you know, we've still got some talking to do, there will very well be a possibility that if the court would approve of it, split my argument —

THE COURT: No.

MR. ROGERS: No.

THE COURT: I'll give you an argument, but I'm not going to allow you to split it.

MR. DAVIS: Your Honor, aren't we entitled to open and close?

THE COURT: Yes.

MR. DAVIS: We're talking about he open and then also do —

THE COURT: I'll give you the last argument, *but I'm not going to let him have two arguments.*

MR. DAVIS: Just for the purpose of the record, we're requesting that Mr. Rogers be allowed to argue — open arguments and then let [the District Attorney] do his and then come back and do additional arguments and then I close out with my arguments.

THE COURT: No, . . . I'm not going to give one lawyer over there on your side two different arguments. Now, I'll let you have it any way you want to. I'll let you argue before [the District Attorney]. I'll let one of you argue before [the

District Attorney], one after. I'll let both of you argue after. *But I'm not going to let one lawyer, Mr. Rogers, have two separate arguments.*

MR. DAVIS: Your Honor, for the purpose of the record, then, that was our intention. And since we won't be allowed to do that, we would except for the record. And give us time to decide how we're going to do arguments in light of that.

. . . .

THE COURT: All right. So, then, in the morning, Mr. Rogers, you will either argue before [the District Attorney]. And if you elect not to, then [the District Attorney] will go first and then Mr. Rogers and Mr. Davis.

MR. DAVIS: Yes, sir.

MR. ROGERS: Yes.

(Emphasis added). The trial court then took a recess until the following morning.

On the morning after the charge conference, the following occurred in open court out of the presence of the jury:

THE COURT: All right. Mr. Bailiff, are all fourteen members of the jury in the jury room?

THE BAILIFF: Yes, sir.

THE COURT: Let the record show it's now Thursday, June the 4th, 1992.

Mr. Rogers, will you go before [the District Attorney] or after [him]?

MR. ROGERS: Well, we'd renew our motion as of yesterday as far as the arrangement we proposed yesterday which I understand you are going to—

THE COURT: *Well, that is to let you argue and let another person argue and you argue again?*

MR. ROGERS: Yes, sir.

THE COURT: Okay, okay. That motion will be denied.

MR. ROGERS: I will go, then, after [the District Attorney] and Mr. Davis will follow me.

THE COURT: So, [District Attorney] Townsend, that means that you will be first, and you say that you'll take approximately forty-five minutes; and then Mr. Rogers you will be next with approximately forty-five minutes; and Mr. Davis then you'll be approximately forty-five minutes.

(Emphasis added).

The foregoing dialogue between the trial court and counsel for the defendant during the charge conference and immediately before the arguments of counsel on the following morning at the close of the capital sentencing proceeding made it clear the trial court would not, under any set of circumstances, allow Mr. Rogers to make more than one single argument on behalf of the defendant during the capital sentencing proceeding. The trial court erred in this regard.

In N.C.G.S. § 84-14, the General Assembly of North Carolina has expressly provided in pertinent part that:

In all trials in the superior courts there shall be allowed two addresses to the jury for the State or plaintiff and two for the defendant, *except in capital felonies, where there shall be no limit as to number.* The judges of the superior court are authorized to limit the time of argument of counsel to the jury on the trial of actions, civil and criminal as follows: to not less than one hour on each side in misdemeanors and appeals from justices of the peace; to not less than two hours on each side in all other civil actions and in felonies less than capital; *in capital felonies, the time of argument of counsel may not be limited otherwise than by consent, except that the court may limit the number of those who may address the jury to three counsel on each side.*

N.C.G.S. § 84-14 (1985) (emphases added). In *State v. Gladden*, 315 N.C. 398, 421, 340 S.E.2d 673, 688, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986), this Court stated:

We construe N.C.G.S. § 84-14 to mean that, although the trial court in a capital case may limit to three the number of counsel on each side who may address the jury, those three (or however many actually argue) may argue for as long as they wish *and each may address the jury as many times as he desires.* Thus, for example, if one defense attorney grows weary of arguing, he may allow another defense attorney to address the jury

and may, upon being refreshed, rise again to make another address during the defendant's time for argument.

(Emphasis added). In a later case, this Court reemphasized that *Gladden* "makes it clear" that in a capital case all counsel for the defendant may argue for as long as they wish and each may address the jury as many times as he or she desires. *State v. Eury*, 317 N.C. 511, 516, 346 S.E.2d 447, 450 (1986).

In the present case, the trial court erred in denying Mr. Rogers the opportunity to argue more than once on behalf of the defendant at the close of the capital sentencing proceeding. *Id.* Further, as one can only speculate as to how the jury would have reacted had the defendant not been deprived of the benefit of multiple arguments on his behalf by Mr. Rogers, we are required under our prior decisions to hold that this error by the trial court constituted prejudicial error. *Id.* at 517, 346 S.E.2d at 450. Accordingly, the defendant is entitled to have the sentence of death entered against him vacated and to have this case remanded to the Superior Court, Robeson County, for a new capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000.

### III. Preservation Issues

The defendant has brought forward eight additional assignments which he concedes this Court has previously rejected in other cases. We have considered the defendant's arguments with regard to these issues and have found no compelling reason to depart from our prior holdings which the defendant correctly recognizes as dispositive. These assignments of error are therefore without merit.

Having considered all of the defendant's assigned errors, we hold that the guilt-innocence determination phase of the defendant's trial was free of prejudicial error. However, the trial court's failure to allow both counsel for the defendant to argue as many times as they wished at the conclusion of the capital sentencing proceeding requires that the defendant receive a new capital sentencing proceeding. The verdict against the defendant for first-degree murder and the verdict and judgment for robbery with a dangerous weapon shall remain undisturbed. The sentence of death for first-degree murder is vacated and this case is remanded to the Superior Court, Robeson County, for a new capital sentencing proceeding in accordance with N.C.G.S. § 15A-2000.

NO. 91CRS3025, ROBBERY WITH A DANGEROUS WEAPON: NO ERROR.

NO. 91CRS2709, FIRST-DEGREE MURDER: GUILT PHASE, NO ERROR; SENTENCE VACATED AND CASE REMANDED FOR A NEW CAPITAL SENTENCING PROCEEDING IN AC- CORDANCE WITH N.C.G.S. § 15A-2000.